UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | Criminal No.   21-cr-90 |
| NATHANIEL DEGRAVE | : | Judge Friedman |
| | : | |

**DEFENDANT NATHANIEL DEGRAVE'S REPLY**
**APPLICATION FOR MODIFICATION OF PRETRIAL DETENTION**

Defendant Nathaniel DeGrave, through undersigned counsel, respectfully replies to the Government's Opposition to Mr. DeGrave's Motion for Release.

As grounds for this motion defendant states the following:

1.  On or about February 1, 2021, defendant Nathaniel DeGrave appeared before the U.S. District Court for the District of Nevada, before the Honorable Magistrate Judge Daniel Albregts, as the sole defendant in a U.S. District Court for the District of Columbia complaint charging Mr. DeGrave in relation to illegal entry of the U.S. Capitol on January 6, 2021. Mr. DeGrave waived his right to an identity hearing, and was detained without bond pending transfer to the District of Columbia.

2.  On or about February 5, Mr. DeGrave was indicted in the District of Columbia, and charged in a 9-count indictment in relation to the events of the Capitol on January 6, 2021. He was ordered transferred to this jurisdiction, but did not, in fact, arrive in the District of Columbia until approximately March 10, 2021. During this time he was held in jails in Oklahoma.

1

3.     On March 16, 2021, Mr. DeGrave was arraigned in this courthouse, before the Honorable Paul Friedman. Mr. DeGrave moved for his immediate release. Judge Friedman ordered the government to respond by March 19, 2021, and the defense to reply by March 23, 2021. A hearing on the issue is scheduled for March 25, 2021.

4.     Mr. DeGrave, who is 31 years old, has only one prior conviction, for underage consumption of alcohol, for which he received a fine in 2009. While the Pretrial Services Agency (PSA) report indicates 3 prior arrests, one is for the instant case, and one would be for the 2009 case.

5.     While Mr. DeGrave grew up in Pennsylvania, he has lived in Las Vegas, Nevada for more than 3 years. Undersigned counsel has provided the government with a letter from Mr. DeGrave's resident manager verifying his residence in Las Vegas for 3 years. According to the resident manager, Mr. DeGrave rented a condo from February 2018 until September 2020. (The letter contains a typo listing September 2021, rather than 2020.) The resident manager stated, "He has always paid his rent on time and been a very reliable tenant." The manager even recommended Mr. DeGrave to another property manager when his lease expired, whereupon he entered a 1-year lease in the same community. The manager noted, "Again, Mr. DeGrave has paid his rent on time and is in good standing." Despite his February 1 arrest, the rent is fully paid through March 31. Mr. DeGrave's long term friend has assured undersigned counsel that his rent will also be paid for April. In sum, Mr. DeGrave is a stable and reliable resident of Nevada.

6.     Mr. DeGrave has been self-employed in marketing for a number of years, and has also worked and received certification as a personal trainer. His marketing work includes assisting

in marketing of health supplements.         Attached Exhibit A, filed under Seal pursuant to the redaction rules, and due to personal information contained in the letter, is a letter of support for Mr. DeGrave from his stepfather, S. Palatnick, attesting to his peaceful character, as well as his ability to provide a stable life for himself despite a very difficult upbringing.         Also attached, Exhibit B, is a letter from Mr. DeGrave's grandfather attesting to his character.

7.     The government has not argued in its Opposition To Bond (Doc. 13), and cannot argue, given his stable and stellar history, that Mr. DeGrave is a risk of flight.  (The Court in Nevada did not have this information when determining bond on February 1, 2021.)

8.     Mr. DeGrave is mortified and remorseful for his conduct in participating in any illegal activities on January 6.       The government claims that his remorse is self-serving.  This government argument would place people in a no-win position.  If they do not accept responsibility they lack remorse, but if they do accept responsibility they are self serving.

Mr. DeGrave acknowledges that he totally accepted former President Trump's story that the election was stolen, and that President Trump had in fact won the election. Mr. DeGrave made clear that he felt that his actions were patriotic in coming to DC, and he came to the Capitol for "protecting the country" - not to destroy it.  The government acknowledges as much in its bond motion via the statements of Mr. DeGrave. (See, e.g., Government Opposition, doc. 13, p. 13).  It is clear from Mr. DeGrave's statements that he expected Pence to refuse to certify the "fraudulent" election, as portrayed by Trump, and Mr. DeGrave specifically stated that he was here to "defend this city" from antifa. (Antifa is defined as "a political protest movement comprising autonomous groups affiliated by their militant opposition to fascism and other forms of extreme right-wing ideology.")  Mr. DeGrave emphasized repeatedly prior to the President's rally that he

3

would not start violence, but rather defend the country against actions by antifa.

While his comments were at times grandiose, they followed the exhortations - and often even exact words - of former President Trump.   In fact, Mr. DeGrave was essentially mimicking former President Trump's claims that the election was "stolen" and his supporters have to "stop the steal," "save our democracy, " and come to the "wild time" on January 6, 2021.  (All items in quotation marks are direct quotes from former President Trump.)  These words cannot be construed as intent to commit violence by Mr. DeGrave.  Trump implored the crowd on January 6, 2021, "We will never give up, we will never concede."  He exhorted, "We fight, we fight like hell, and if you don't fight like hell, you're not going to have a country anymore."

It should be noted that many of the social media posts referenced in the Government's motion are from two other persons (Ronald Sandlin and Josiah Colt), and should not be attributed to Mr. DeGrave.  While he allegedly went to the Capitol with the two, the Government concedes they did not stay together in the Capitol.  He was not charged with them by information or indictment, and they have separate cases before separate Judges in this Court. (While the Government points to contacts with those persons on social media, he did not actually meet them in person until January 5, 2021.)   Mr. DeGrave di not initiate the trip to the District of Columbia, but responded to Mr. Sandlin's posts on social media.

9. <u>Corrections and Additions Regarding the Government's Oppostion.</u>

It is in fact clear to the Government that Mr. DeGrave did NOT bring a gun to Washington, DC.  (See doc. 13 p. 12).  It should be made clear that there is no evidence that he brought a knife or bear spray to the Capitol.   In fact, the government referenced a video in which

4

his can of bear spray, legally purchased, was ruined when he accidentally set it off in a car prior to the January 6 rally.

And it is clear to anyone who is familiar with motorcycles that Mr. DeGrave was wearing a motorcycle face mask and jacket - NOT body armor.  See Exhibits C & D.  Exhibit C displays a very popular $17 motorcycle face mask as sold on Amazon, and Exhibit D shows a very popular $55 motorcycle jacket available on Amazon. Both items rate 3.5 of 4 stars on Amazon, and are almost identical to Mr. DeGrave's outfit.  Body armor, in contrast, is designed to repel attacks, such as bullets, and generally costs hundreds of dollars.

The claim that Mr. DeGrave was harboring a fugitive is without merit. There is no reason to believe that Mr. DeGrave was aware of the sealed complaint and warrant concerning Mr. Sandlin until Mr. Sandlin was arrested for that warrant.

There is no indication that Mr. DeGrave was affiliated with Proud Boys, Three Percenters, Oath Keepers, Oath Breakers or any other extremist group.   Most important, the Government has acknowledged that Mr. DeGrave did not injure the officer at the entry to the Senate at the Capitol, who was much larger than Mr. DeGrave.  Mr. DeGrave wrongly got caught up and participated in the mob, but fortunately this was more theater than violence on his part. He was not a leader, but rather a follower, caught up in the mob.

12.     The government claims that Mr. DeGrave is a serious risk to obstruct justice.  Mr. DeGrave partially drove, then flew back home to his apartment in Nevada after January 6.  He made absolutely no attempt to hide or evade law enforcement authorities.  Undersigned counsel was not able to analyze Mr. DeGrave's 5,000+ page Facebook warrant return, which was provided

to counsel last evening, but Mr. DeGrave's stepfather, who followed him on Facebook, noted that Mr. DeGrave did not discuss politics on his Facebook until recently. Mr. DeGrave's alleged deletions from his Facebook account reflect someone who does not want to boast of his activity, and his statements to the FBI after his arrest reflect a very frightened and unsophisticated person.

13. The factors which came together on January 6, 2021, leading to a breach of the Capitol, are unique. This is certainly the first time a sitting president has claimed that a presidential election was fraudulent, that the election was stolen, and that his supporters needed to come to the Capitol to "fight like hell." It the first time in more than 200 years that the Capitol has been breached. Mr. DeGrave was caught up in this event. He has no history of revolutionary activities, and there is no reason to believe he would succumb to the false exhortations of any President again.

14. Given these factors, the Government has not shown by clear and convincing evidence that Mr. DeGrave would obstruct justice if released in this case.

15. If the Court deems it necessary, electronic monitoring would allow Mr. DeGrave to be at home, while allowing the court to monitor his location, ensuring that he does not enter the District of Columbia, except for his pending case.

CONCLUSION

For the reasons stated above, the defendant respectfully requests that this Court modify the pretrial detention order as presently set, and order that he be released on his personal recognizance with the following conditions:

1. that he reside at the address listed at a bond hearing in this case;

2. that he be placed on electronic monitoring, if the court deems necessary, including home detention; and

3. that he report by phone as required to PSA in Nevada, or PSA in DC; and

4. that he abide by any social media restrictions placed by the Court.

Respectfully submitted,

_____/s/_____

Joanne D. Slaight, #332866
400 7th St, N.W., Suite 206
Washington, DC  20004
Phone (202) 256-8969
Email: jslaight@att.net