UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Case Number 21-cr-90-PLF |
| NATHANIEL DEGRAVE, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S MOTION TO SEAL**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court to issue an Order directing that three exhibits proposed to be submitted to the Court in advance of a hearing on the defendant's motion for bond—i.e., three Capitol building CCTV videos depicting assaults on law enforcement officers by the defendant and his co-conspirators—be placed under seal until further order of the Court. These exhibits have been provided to defense counsel subject to a protective order entered by this Court.

In support of its motion, the government submits that the materials are part of an ongoing grand jury investigation of the Capitol riot and their inclusion on the public docket could endanger the security of the U.S. Capitol and members and staff of Congress who work therein. These materials were provided to the U.S. Attorney's Office by the U.S. Capitol Police—a Legislative Branch agency—under specific conditions, including that the materials not be disseminated outside of a protective order unless to satisfy the government's discovery obligations or for use as evidence in the prosecution of a criminal offense.

Government counsel has consulted with defense counsel, who stated that she does not take a position on this motion, though she noted that she believed the proposed exhibits were duplicative of materials already submitted to the Court.[1]

## **Legal Authorities**

Documents and other materials filed in court "intended to influence the court" are judicial records. *Leopold v. United* States, 964 F.3d 1121, 1128 (D.C. Cir. 2020) (citation omitted). The exhibits proposed to be submitted to the Court for the purpose of influencing a detention decision are thus judicial records.

There are two interests potentially implicated by sealing judicial records relevant to a criminal case: the common-law right of public access to judicial records and the First Amendment right of access to criminal proceedings. *See, e.g.*, *Press-Enterprise Co v. Superior Court*, 478 U.S. 1, 13 (1986) (holding that "the qualified First Amendment right of access to criminal proceedings applies to preliminary hearings as they are conducted in California"); *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017) (discussing common-law right of access to judicial records). The interests implicated depend on the type of filing and stage of the case. *See, e.g.*, *Wash. Post v. Robinson*, 935 F.2d 282, 288 (D.C. Cir. 1991) (holding that First Amendment right of access applies to plea agreements because "such access has historically been available[ ] and serves an important function of monitoring prosecutorial or judicial misconduct"); *United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997) ("A number of circuits have concluded that the logic of *Press-Enterprise II* extends to at

---

[1] The government does not believe the materials are duplicative. Two video exhibits show different angles of the events and from a stable camera—i.e., a camera not being carried by a rioter. Another proposed video exhibit is not duplicative at all, as it depicts another assault by the defendant in which he is part of a mob pushing law enforcement guarding an exterior door from the inside and forcing the exterior door open, allowing other rioters to breach the Capitol. The materials previously submitted to the Court do not show this.

least some categories of court documents and records, such that the First Amendment balancing test there articulated should be applied before such qualifying documents and records can be sealed."); *United States v. Alcantara*, 396 F.3d 189, 196 (2d Cir. 2005) (explaining that the question whether the First Amendment right of access applies "require[s] examination of both 'logic' and 'experience' in the public's and press's qualified First Amendment right of access"). The Sixth Amendment public trial right does not give the public or the press a right to make copies of evidence introduced during a trial. *See Nixon v. Warner Comm'ns.*, 435 U.S. 589, 610 (1978).

Where the First Amendment right of access is implicated, "the party seeking to close the hearing [or seal the document] must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." *Waller v. Georgia*, 467 U.S. 39, 48 (1984); *see also id.* at 47 (noting that the test is the same for the Sixth Amendment right to a public trial and First Amendment right of access); *United States v. Brice*, 649 F.3d 793, 796 (D.C. Cir. 2011) ("Where there is a First Amendment right of access to a judicial proceeding, the presumption [of access] can be overridden only if (1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest.") (quotation marks omitted). If only the common-law right of public access to judicial records is implicated, there is nonetheless "a 'strong presumption in favor of public access to judicial proceedings,' including judicial records." *Leopold*, 964 F.3d 1121, 1127 (quoting *United States v. Hubbard*, 650 F.2d 293, 317 (D.C. Cir. 1980)). The Court therefore must "weigh: (1) the need for public access to

3

the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings." *MetLife*, 865 F.3d at 665 (quotation marks omitted).

Under the stricter constitutional test, the D.C. Circuit has suggested that sealing may be allowed to protect (1) ongoing criminal investigations, or the safety of the defendant and his family, *Robinson*, 935 F.2d at 291; (2) risks of violent attacks against a cooperating defendant, *Dhiab v. Trump*, 852 F.3d 1087, 1097 (D.C. Cir. 2017); and (3) substantial amounts of material of an especially personal and private nature relating to the medical, educational, and mental health progress of underage victims, *Brice*, 649 F.3d at 794.

Notwithstanding the above, when Congress has directly spoken on the issue of granting the public access to judicial materials, neither the common-law nor the First Amendment right of access analyses appear to apply. *See, e.g.*, *Leopold*, 964 F.3d at 1129 ("[T]he common-law [right of access] inquiry must yield when Congress has spoken directly to the issue at hand") (quotation marks omitted); *In re Grand Jury Proceedings (Miller)*, 493 F.3d 152, 154 (D.C. Cir. 2007) ("[T]here is no First Amendment right of access to secret grand jury matters.").

## Argument

The U.S. Capitol Police has expressed a concern that providing unfettered access to sensitive information, such as the location of security cameras on Capitol grounds, to the public could result in the layout, vulnerabilities, and security weaknesses of the U.S. Capitol being collected, exposes, and passed on to those who might wish to attack the Capitol again.

Although the government's proposed exhibits by themselves have not been designated as "security information"[2] under 2 U.S.C. § 1979 by the U.S. Capitol Police, the Capitol Police's position is that providing access to large sections of the Capitol's CCTV footage would render such information, in the aggregate, "security information" under the statute, as it would provide individuals with a map of where security cameras are located as well as a clear picture of the interior of the Capitol, including entry and exit points, office locations, and the relation of the crucial chambers and offices to other areas of the Capitol.  Analogously, the Architect of the Capitol treats its blueprints of the Capitol as "security information" under the statute.  Furthermore, the U.S. Capitol Police Department Directive 1000.002, Retrieval of Archived Video, provides that the release of any footage from the Department's CCTV system must be approved by the Assistant Chief of Police for Operations, the agency's second highest sworn officer.  *See* Ex. A.

The statute also restricts the release of "security information," allowing release "only if the Capitol Police Board determines in consultation with other appropriate law enforcement officials, experts in security preparedness, and appropriate committees of Congress, that the release of the security information will not compromise the security and safety of the Capitol buildings and grounds or any individual whose protection and safety is under the jurisdiction of the Capitol Police."  2 U.S.C. § 1979(b).  The Capitol Police Board is charged with promulgating regulations to carry out this statute, with the approval of certain congressional committees.  *Id.* § 1979(d).  Because Congress appears to have spoken on the issue, the footage arguably is not subject to disclosure at all.  *See, e.g.*, *Leopold*, 964 F.3d at 1129; *In re Grand Jury Proceedings (Miller)*, 493

---

[2] "Security information" is defined as "(1) is sensitive with respect to the policing, protection, physical security, intelligence, counterterrorism actions, or emergency preparedness and response relating to Congress, any statutory protectee of the Capitol Police, and the Capitol buildings and grounds; and (2) is obtained by, on behalf of, or concerning the Capitol Police Board, the Capitol Police, or any incident command relating to emergency response." 18 U.S.C. § 1979(a).

F.3d 152, 154.

The government further submits that under the common-law right of access balancing test endorsed by the D.C. Circuit, the proposed exhibits may be sealed, at least temporarily, to "guard against risks to national security interests." *See United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980) (citing, among other cases, *United States v. Wash. Post*, 403 U.S. 943 (1971) (court permitting filing under seal of materials claimed to affect national security)). Under the stricter First Amendment analysis regarding the right of access of the public to criminal proceedings, the government also submits that the facts present an extraordinary situation and a compelling governmental interest that justify the sealing of materials that the government proposes to submit, and no alternatives would adequately protect the compelling interest. *See Brice*, 649 F.3d at 796; *Robinson*, 935 F.2d at 289 n.10; *Hubbard*, 650 F.2d at 316-17. Moreover, the public already has access to a description of the proposed exhibits in the government's opposition to the defendant's motion for bond as well as screenshots from one proposed exhibit, thus diminishing its need at this early juncture in the case for the actual footage. *See MetLife*, 865 F.3d at 665. And the Capitol Police, which owns the footage, has strongly opposed its public disclosure for security purposes. *See id.*

In another Capitol riot case, Chief Judge Howell denied a defendant's motion to seal various video exhibits, including Capitol security camera footage, finding that the *Hubbard* factors described above weighed against sealing and in favor of public access. *See United States v. Emanuel Jackson*, 21-mj-115 (D.D.C. 2021), ECF No. 24, at 11-17. The government concedes that many of the factors the Chief Judge held to weigh in favor of disclosure are present here, such as materials bearing on an issue of "deep national important and public interest," the availability of screenshots from some footage already being publicly available, and

the purpose of the exhibits—i.e., to influence the Court's decision on whether to detain the defendant. *See id.* The government nevertheless argues that the compelling governmental interest of protecting national security—that is, protecting the layout and security apparatus of the Capitol from public disclosure just two short months after an insurrection on its grounds—justify the sealing of the proposed exhibits.

    For all the foregoing reasons, the government respectfully requests that the three proposed video exhibits be placed under seal until further order of the Court.

                        Respectfully submitted,

                        CHANNING D. PHILLIPS
                        ACTING UNITED STATES ATTORNEY
                        D.C. Bar No. 415793

                        By: */s/ Jessica Arco*
                        Jessica Arco
                        Special Assistant U.S. Attorney
                        D.C. Bar No: 1035204
                        U.S. Attorney's Office for the District of Columbia
                        555 Fourth Street NW, Fourth Floor
                        Washington, DC 20530
                        Jessica.arco2@usdoj.gov
                        202-431-5198

Date:  March 25, 2021

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel, Joanne Slaight, Esq., this 25th day of March 2021.

                                      /s/  
                                      Jessica Arco  
                                      Special Assistant United States Attorney