UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | : | |
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No.   21-cr-90 |
| | : | |
| NATHANIEL DEGRAVE | : | Judge Friedman |
| _____ | : | |

**DEFENDANT NATHANIEL DEGRAVE'S SECOND SUPPLEMENT -**
**APPLICATION FOR PRETRIAL RELEASE**

Defendant Nathaniel DeGrave, through undersigned counsel, respectfully supplements his application for release.

1.    Assault Allegations

Mr. DeGrave is charged with one misdemeanor count of unarmed assault – of a Capitol Police Officer, "NT" in the indictment.   This count references the incident outside the Senate chambers.   The government informed defense counsel  that the officer was not injured.  Mr. Sandlin was charged with assault for the same "NT."  (United States v. Ronald Sandlin, 2021-CR-88, doc. 6, page 1, count 1.)   The government noted in its bond motion regarding Mr. Sandlin  that the officer did not recall being punched.  Sandlin, supra, Goverment motion, doc. 13, p. 16, ft 8. Furthermore, in an interview provided to the defense, NT reported to an FBI agent that "shoving ensued between the officers and one of the individuals in the group."  (Emphasis added.)  NT described the incident as a "shoving match."   (One other officer on the scene thought NT was hit in the ear, and the third officer thought he saw someone take a swing at NT, and NT was hit in the

1

head.  The Government attributes this action to Mr. Sandlin, as stated in its bond motion for Mr.

Sandlin.  Id.)

 While Mr. DeGrave completely recognizes that he should not have entered the fray, he

was not the initial assailant, it is impossible to confirm from the government's videos that he in

fact even touched the officer, and the officer, himself,  does not believe that he was punched.  All

3 officers described the incident as "shoving."

While not charging Mr. DeGrave, the government points out that he was in the fray during

an incident inside an entry door to the Capitol.  Mr. Sandlin was charged with assault in that

incident, for trying to remove the officer's headgear.  Again, while Mr. DeGrave agrees completely

that he should have stayed clear, it is also clear that he is trying to get video footage in that

incident, rather than trying to assault the officer, who he does not touch.

2.    Lunch talk

The government repeats at length a video made by Mr. Sandlin at lunch prior to the Capitol

entry.  (Doc. 13, p. 13)  At one point Mr. Sandlin told DeGrave to show the photos of bricks

allegedly being left around the city.  Mr. DeGrave then stated, "We're here to defend this city, and

any city in this country. Let Antifa try us." Clearly, Mr. DeGrave thought that Antifa would resort

to violence, and that he would protect the city from violence by Antifa, rather than initiate

violence.

3.    Gearing up for the rally

The government concedes that there is zero evidence that Mr. DeGrave brought

any weapons into the Capitol.  Undersigned counsel has previously pointed out that the outwear

2

of Mr. DeGrave was NOT body armour, but rather costume-like.  Counsel stands corrected concerning the exact helmet that Mr. DeGrave wore.  A Facebook entry shows it as a $69 helmet, including shield and face mask.  Unfortunately, as pointed out on the helmet's Amazon website, it is not ASTM (American Society for Testing and Materials) approved, and thus should not even be worn at paint ball facilities . It is not rated for motorcycle use.  It is purely costume.

    4.       Social Media Conversations

The government references public and private Facebook messaging, as if Facebook messages which are private (available only to designated Facebook members) reflect a sinister purpose.  In fact, private Facebook messages are as sinister as emails - they are messages which are designated to specific person(s), rather than any Facebook user.   There is nothing sinister about private messages.

The government's discovery includes a private Facebook message group which includes only two persons - Ronnie Sandlin and Josiah Colt.  Those messages are from at least the beginning of the coverage date of the government's warrant - November 3, 2020 -  and indicate that the two had an ongoing relationship.  Mr. DeGrave was not included in that group.

        In contrast, Mr. Sandlin first appeared on Mr. DeGrave's Facebook account on November 17, 2020 - fourteen days after the beginning coverage date of the government's warrant.  Mr. Colt first appeared on Mr. DeGrave's Facebook account on 12/31/20, when it appears that a Facebook message group was formed for persons who were expected to travel to the Capitol for former President Trump's "Stop the Steal" rally, including Mrrs. Sandlin, Colt, DeGrave, X and Y (names redacted).  This group was able to exchange information for the rally,

3

including flight information and lodging.   The Facebook entries are consistent with Mr. DeGrave's relationship to Mrrs. Sandlin and Colt - - he met them in person for the first time on January 5, 2021.

On January 4, 2021, Mr. DeGrave posted a flyer to the Facebook group planning to attend the rally.  The rally was for OUTSIDE the Capitol, and he posted to meet at the map location at 10 am. Exhibit A.  It is unclear if anyone met outside the Capitol on January 5, or the rally occurred, but to counsel's knowledge there was no illegal entry to the Capitol on that date.   He posted another rally flyer on January 5, 2021.  That flyer is listed as by magarallymap.com.  Four events were listed, including two rallies outside the Capitol:  a MomsforAmerica/Save the Republic Rally, and a One Nation Under God Rally, by Virginia Women for Trump.  The latter rally was "intended to create the spiritual energy to touch the hearts of members of Congress and the Senate..." Exhibit B.  On January 6, X posted another (updated) Maga Rally Map Guide.  Four events were listed, including two outside the Capitol - a Freedom Rally and a Wild Protest rally (as originally coined by former President Trump to describe plans for January 6, 2021). Exhibit C.  None of these flyers suggest any planned  illegal activity.

5.      Post- Capitol events

Both Mr. Colt and Mr. Sandlin posted videos or were interviewed by video after leaving the Capitol.  Mr. DeGrave did not do either.  In fact, a review of Mr. DeGrave's Facebook return reflects that Mr. DeGrave did <u>not</u> remove or delete (also called "unsend" in Facebook) any Facebook posts from the Facebook group which planned to attend the DC rally.  Conversations before, during and after the rally from that group remained on his Facebook account when obtained by the

4

government in February or March of this year. (Undersigned counsel does not have the warrant return at this time.) There is, in fact, no evidence of deletions which could possibly be conceived as obstruction on Facebook. While Mr. DeGrave did unsend conversations he had with other people after January 6, that could not rationally be considered obstruction, as these are not the people he was with on January 6, or accused of colluding with. It is not uncommon for people to delete posts which they, in hindsight, consider inappropriate. Deletion of posts, or even complete accounts, oten occurs publicly on the Twitter social media website, and is a belated act of common sense.

This is especially significant, as the government requests detention under 18 USC § 3142 (f)(2), for a serious risk of obstruction. Simply put, there is zero evidence of risk of obstruction by Mr. DeGraves if he is released.

    7.    Other Cases

The government did not oppose the release of Josiah Colt, who the government insists on connecting with Mr. DeGrave, even though they are not charged as codefendants. In a now iconic Capitol photo, Mr. Colt rappelled down the balcony of the Senate Chambers - an endeavor Mr. DeGrave did not follow. Mr. Colt then sat down and put his feet up on Vice President Pence's podium. He was later interviewed and spewed an obscenity concerning Speaker Pelosi, although in a subsequent interview he showed remorse for his actions. Mr. Colt's indictment included a 20-year maximum sentence for his actions under 18 USC § 1512( c)(2) and 2 (obstruction of an official proceeding). While Mr. Colt was not charged with misdemeanor assault, he was charged with the most serious offense included in Mr. DeGrave's indictment, and his Senate behavior created

damage to the reputation of the U.S., which was shown all over the world.

The actions of Mr. DeGrave, who did not injure anyone, was not more serious or harmful than those of Mr. Colt.

Mr. Sandlin is charged with a separate count of assault for allegedly trying to remove an officer's helmet while in the Capitol, and also posted videos of himself smoking marijuana in the Capitol - another video which made international headlines. Mr. DeGrave did neither.

Defendant Burno Cua, case no. 21-CR-107, took a baton into the Capitol, which he openly twirled, and tried to open doors to various rooms. He was also charged with assaulting an officer at the Senate Gallery door as part of a 12-count indictment against him. Importantly, he was charged with engaging in physical violence with a deadly weapon, in violation of 18 USC § 1752(a)(4) and (b)(1)(A). This contrasts with Mr. DeGrave, who did not carry a weapon, and was not so charged. Unlike Mr. DeGrave, Mr. Cua then sat in Vice President Pence's chair, and took photos of documents on legislators' desks. Unlike Mr. DeGrave, on December 19, he posted on Parler, including "tak[ing] our country back by force." Unlike Mr. DeGrave, he did not show opposition to violence until after he was arrested. On January 9, 2021, he posted on Instagram, "I want a bloody war I'm ready to start shooting and I'm ready to die before I watch America crash and burn." The Court, in reviewing his entire record, including his age and remorse expressed after his arrest, ordered that he be released to the third custody of his parents, who had actually taken him to the Capitol and permitted him to climb the scaffolding before his entry into the Capitol. See United States v. Burno Cua, 21-CR-107, Memorandum Opinion and Order, 3/10/21, Doc. 25.

6

In contrast, Mr. DeGrave openly stated on Facebook shortly after January 6, in the face of harassment by a Trump supporter, "The fact that people were killed over the week is truly sickening.  Violence is not cool whether it comes from the left or the right.  I condemned it when antifa did it and I condemn it now."

Release is also consistent with the decision of the U.S. Court of Appeals for the D.C. Circuit in United States v. Munchel, case no. 21-3010, March 26, 2021.   The Court of Appeals looked to the factors in the Bail Reform Act to determine whether the government could prove by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of any other person and the community.  18 USC § 3142(f).   In Munchel, the government argued that the defendant possessed a dangerous weapon - a taser - authorizing detention under 18 USC § 3142(f)(1)(E).   Despite this, the Court of Appeals remanded for reconsideration of the detention order, stating, "the record contains no evidence indicating that, while inside the Capitol, Munchel or Eisenhart vandalized any property or physically harmed any person." Op. at 18 (citations omitted).   Mr. DeGrave also did not vandalize property or physically harm any person.  Here, Mr. DeGrave was not charged with an armed offense, but even under the factors enumerated in Munchel, he should be released.

8.      Additional support for Mr. DeGrave.

Attached Exhibit D is an additional letter of support for Mr. DeGrave, this time by a former landlord in his hometown, who had rented to him for 10 years.  (The government has been supplied with an unredacted copy of Exhibit D.)  This adds to the support already supplied to the Court by residents of his adopted city of Las Vegas.

Mr. DeGrave has a law abiding past, and can be expected to continue his law abiding nature, including following any and all Court orders, if released by this Court.

The Government has not shown by clear and convincing evidence that Mr. DeGrave would be a danger to the community if released.


Respectfully submitted,


_____/s/_____

Joanne D. Slaight, #332866
400 7th St, N.W., Suite 206
Washington, DC  20004
Phone (202) 256-8969
Email: jslaight@att.net

8