UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | Criminal No.   21-cr-90 |
| NATHANIEL DEGRAVE | : | Judge Friedman |

### DEFENDANT NATHANIEL DEGRAVE'S REPLY
### COURT ORDER of APRIL 23, 2021

Defendant Nathaniel DeGrave, replies to the Court's Order Acceptance of the Government's Proffered Videos submitted at noon on April 23, 2021, for the April 26, 2021 hearing. The defense does not request a continuance. Mr. DeGrave does not want his liberty hearing postponed while he remains incarcerated under the circumstances of this case.

Mr. DeGrave was presented in the U.S. District Court for Nevada on January 28 - almost 3 moths ago. This bond determination has been substantially delayed by government actions. This has occurred in other January 6 Capitol cases, and the U.S. Court of Appeals for the D.C. Circuit has found it disturbing. The U.S. Court of Appeals in United States v. Munchel, Nos. 21-3010, 21-3011, 2021 U.S. App. LEXIS 8810 (D.C. Cir. Mar. 26, 2021), found delay in detention for three weeks without a court finding of dangerousness "troubling," as there is a statutory mandate that review occur "promptly" under 18 U.S.C. § 3145(a), as well as statutory and constitutional requirement of a dangerousness finding. Munchel, supra, p. 9 ft 10 (citations omitted.) But the issue was not presented as a ground for reversal on appeal in that case. Supra. The section 3145 promptness

1

requirement applies here.

For its latest last-minute video submissions, the government does not claim recent access to these videos - rather, that it made a last-minute decision to submit them to the Court. Under normal conditions it would be difficult to review evidence submitted by the government at the last moment. (The government did not supply the video to the defense until Tuesday, with the understanding that it would not submit the video for the bond hearing.) But the national COVID-19 pandemic is not over, exacerbating the problem for incarcerated defendants. Mr. DeGrave is under 23-hour detention in a DC Department of Corrections facility.

https://www.washingtonpost.com/dc-md-va/2021/04/19/dc-jail-lockdown-covid/

https://www.washingtonpost.com/dc-md-va/2021/04/23/dc-jail-covid-lockdown-officials/

Counsel has to request and receive written permission prior to any jail visit. Mr. DeGrave is in further solitary restriction as a defendant from the January 6 U.S. Capitol case. He is fully shackled for his trip to the visiting room. A visit by counsel is "non-contact." Visits are via a glass booth, with a substandard phone connection for audio. In order for Mr. DeGrave to view a video, counsel has to put the laptop monitor up to the glass and hope that Mr. DeGrave can see it. The audio has to be separately placed at the phone receiver. COVID-19 conditions of incarceration are not only damaging to the mental health of incarcerated persons, as detailed in the Washington Post articles, supra. They hinder attorney-client communications, review of discovery, and case preparation - all exacerbated by government delay.

### The Newly Submitted Video Clips

On Friday the government submitted three additional video clips to the Court, which the

government will assert are clips from a GoPro video Josiah Colt and/or Ronald Sandlin had obtained to record the events of January 6.  The absence in any government exhibits of video showing Mr. DeGrave's entrance into the Capitol speaks volumes.  The GoPro video that the defense received in discovery this past week shows that Mr. DeGrave walked through an open door, nonviolently, with no police officers present at the door.

In the clip labeled "FA…" Mr. Colt asked Mr. DeGrave how he was feeling.  He said he was ready, better than ever, today's the day…What is notably absent is any intention to break the law.

The clip labeled "Movies…" starts in a U.S. Capitol hallway, and covers the entry into the Senate balcony.  Mr. DeGrave is clearly not one of the first persons to enter the balcony.  There's a lot of shouting in the room.  Judge Bates' noted the chaotic scene in the Capitol entryway in United States v. Klein, case. no.21-CR-236, where Mr. Klein shouted,  "We need fresh people, we need fresh people," as he was pushing against police officers for a full 38 minutes - with a stolen riot shield.  Mr. Klein was released.  Here, the shouts in the balcony included, "Patriots.  Nobody destroys anything."  Mr. Colt yelled into the camera, "This is our house.  Respect it.  This is sacred ground.  This is sacred ground."

The clip labeled "GP…"  presumably starts after Mr. Colt has rappelled off the balcony.  There's a lot more shouting.  Someone off-camera yells to take laptops, and "everything," but there is no identifying video, and no indication that items were actually taken from the Senate.  This use of hyperbole is analogous to Mr. Munchel, who yelled on the Senate floor, "I want that f**king gavel," but there was no evidence that he in fact took the gavel, and the Court of Appeals remanded his detention order.  Munchel, supra.  (The submitted  videos here do not appear to

3

include audio of Mr. Munchel's shouts in the Senate chambers, or his mother's chanting, "Treason, Treason!")

At the 3-minute mark, the Go-Pro director leaves the Senate balcony. While he may be the worst videographer at the Capitol, the camera shows from his face - unmasked - that Mr. DeGrave is holding the GoPro. He walked down the stairs and straight out the Capitol door at the 3:54 mark - with no detour, no resistance, no indication of pepper spray or any violence near him outside the Capitol, and no return to the Capitol.

The government has not made available to the defense U.S. Capitol video of Mr. DeGrave's entrance to the building, but based on the GoPro video that the government has provided, Mr. DeGrave was in the building for a very short time, did not injure anyone, and left with no intent to return.

**Arrest Statement**

On Friday, April 25, 2021, after the filing of the defense brief, the government supplied the defense with transcript of Mr. DeGrave's oral statement, in response to questioning by FBI agents. The transcript references an earlier conversation which was not transcribed. The agents did not warn Mr. DeGrave that a false statement could subject him to perjury charges. While counsel has not located specific regulations or office procedures concerning this for the Nevada or DC FBI field offices, at least some offices apparently require agents to make that warning prior to questioning. This is only fair, especially concerning an arrestee with no prior criminal encounters.

In addition, the statement meets the "exculpatory no" doctrine, excluding it from prosecution for false statements under 18 USC § 1001. The "exculpatory no" doctrine recognizes

that prosecuting someone for false statements when the person is responding to questioning by federal agents comes "uncomfortably close to [violating] the Fifth Amendment." United States v. Codgell, 844 F.2d 179, 182 (4th Cir. 1988)(citations omitted).  While the "exculpatory no" doctrine has not been specifically ruled on in this Circuit, here, the officers asked whether Mr. DeGrave was in the Capitol when they already had video implicating him, and had in fact even charged him.  His response under these circumstances are not pertinent to an assessment of future obstruction, or alternatively dangerousness, under the Bail Act.

      Respectfully submitted,

      _____/s/_____

      Joanne D. Slaight, #332866
      400 7th St, N.W., Suite 206
      Washington, DC  20004
      Phone (202) 256-8969
      Email: jslaight@att.net