## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **Case No. 21-cr-90 (PLF)** |
| **NATHANIEL DEGRAVE,** | : | |
| | : | |
| **Defendant.** | : | |

### RESPONSE TO MINUTE ORDER REGARDING APPLICATION FOR ACCESS TO CERTAIN SEALED VIDEO EXHIBITS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby responds to the Court's June 15, 2021 Minute Order, directing the parties to respond to Petitioners' request to access video exhibits submitted to the Court in the above-captioned case.   Petitioners represent 16 news organizations (hereinafter the "Press Coalition") that have moved this Court to disclose video evidence used in the pretrial detention hearings for the defendant in this case, pursuant to the procedure outlined by the Chief Judge in Standing Order 21-28 (BAH).   The eleven requested exhibits include the following:

1)  **Video 1**: "Helmet grab assault (rioter footage).mp4" (depicting the defendant's co-conspirator attempting to rip the helmet off of a U.S. Capitol Police officer);

2)  **Video 2**: "Video of trio near Capitol entrance.mp4" (depicting the defendant and two co-conspirators near the Rotunda doors);

3)  **Video 3**: "Assault in Senate Gallery hallway.mp4" (GoPro footage recorded by co-conspirator depicting the defendant and another co-conspirator assaulting U.S. Capitol Police officers attempting to lock doors to the Senate Gallery);

1

4) **Video 4**: "The US Capitol Breach As It Happened-MVullQb-Lec.mp4" (an open-source video of a mob just outside the Rotunda doors, posted to YouTube);

5) **Video 5**: "Restaurant video.mp4" (video of the defendant and his two co-conspirators calling on others, among other things, to "take the Capitol");

6) **Video 6**: "FAGW5534.MP4" (video of the defendant marching to the Capitol);

7) **Video 7**: "Movies & TV 2021-04-23 10-26-46.mp4" (GoPro footage depicting the defendant and two co-conspirators roaming halls of the Capitol, assaulting U.S. Capitol Police, and breaching the Senate Gallery balcony);

8) **Video 8**: "GP020391.MP4" (GoPro footage recorded by the defendant from the Senate Gallery balcony);

9) **Video 9**: CCTV footage bearing the prefix 0303 (depicting the defendant and a co-conspirator assaulting U.S. Capitol Police officers attempting to lock doors to the Senate Gallery);

10) **Video 10**: CCTV footage bearing the prefix 0686 (depicting the defendant as part of a mob that assaulted U.S. Capitol Police officers near the Rotunda doors); and

11) **Video 11**: CCTV footage bearing the prefix 7029 (another angle of the mob assault shown in Video 10).

The Press Coalition's request should be granted as to Videos 1 through 8 and denied on its merits as to Videos 9 through 11.  The government does not object to the release of Videos 1 through 8 in accordance with the procedure outlined by the Chief Judge in Standing Order 21-28 (BAH), at 6.  The government opposes the release of Videos 9 through 11, which are sealed subject to the Court's March 25, 2021 Order (Dkt. No. 18).

### I.      Background

On March 24, 2021, in advance of a hearing on the defendant's bond motion, the government uploaded to USAfx, a document sharing platform, three videos depicting events described in the government's opposition: Videos 1 through 3.   On March 25, 2021, the Court held a hearing on the defendant's bond motion, which it ultimately continued to April 2, 2021 and, later, to April 26, 2021.   *See* Dkt. No. 23.   The government also filed a motion to seal three proposed surveillance video exhibits on March 25, 2021, which the Court granted that same day. *See* Dkt. Nos. 17, 18.   Accordingly, on March 30, 2021, the government uploaded to USAfx the three sealed surveillance video exhibits, Videos 9 through 11, for the Court to review.

On April 1, 2021, the government emailed the Court a link to a YouTube video depicting a different angle of a mob—in which the defendant participated—assaulting officers near the Rotunda door of the U.S. Capitol.   In response to an objection to the link raised by defense counsel, the Court ordered the government to make the YouTube video as well as a video referred to in the government's briefing as the "TGI Friday's" video "available to the Court as soon as practicable in the same format in which it has submitted other videos in this case."   *See* Mem. Op. & Order dated Apr. 14, 2021 (Dkt. No. 28, at 2).   On April 15, 2021, the government uploaded to USAfx the two videos requested by the Court: Videos 4 and 5.

Subsequently, in light of the Court's invitation in its April 14, 2021, Order (Dkt. No. 28) to submit "any additional videos it believes the Court should consider," the government uploaded to USAfx on April 23, 2021, three additional videos: Videos 6 through 8.

## II.     Argument

### A.     The Government Does Not Oppose the Release of Videos 1 through 8

The D.C. Circuit has consistently employed the six-factor "Hubbard test" [1] when determining whether the common-law right of access to judicial records requires those records to be made available to the public for copying and inspection.   Applied in the general context of video exhibits admitted into evidence in court hearings involving criminal defendants charged in relation to the January 6, 2021 breach of the U.S. Capitol, and absent an order of the Court, that test generally weighs in favor of allowing public access to these exhibits.

The government submitted Videos 1 through 8 to this Court for it to consider in making its detention determination in this case.   Neither party sought a sealing order for these videos upon their submission.   Therefore, since those videos were used to influence this Court's decision on detention and are not subject to a sealing order, the government does not object to their disclosure at this time.   Furthermore, the government does not oppose the Press Coalition's request in its Notice of Supplemental Authorities that the Court refrain from imposing a restriction pursuant to the Chief Judge's Standing Order as to the "recording copying, downloading, retransmitting or further broadcasting" of Videos 1 through 8 (Standing Order 21-28 (BAH), at 6).

---

[1] The *Hubbard* test balances the following factors: "(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings."   *Leopold v. v. United States*, 964 F.3d 1121, 1131 (D.C. Cir. 2020) (quoting *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017)).

**B.     The Press Coalition May Not Seek Disclosure of Videos 9 through 11 (CCTV Footage)**

Videos 9 through 11 are footage from the U.S. Capitol's closed circuit video system ("CCTV footage").  Videos 9 through 11 remain sealed from the public because the Court has made a finding that "there are reasonable grounds to believe that the disclosure of such materials could jeopardize national security," and the government "has established a compelling governmental interest to justify the requested sealing."  Dkt. No. 18.

The U.S. Capitol Police has expressed a concern that providing unfettered access to sensitive information, such as the location of security cameras on Capitol grounds, to the public could result in the layout, vulnerabilities, and security weaknesses of the U.S. Capitol being collected, exposes, and passed on to those who might wish to attack the Capitol again.  As the government first argued in its motion to seal, Dkt. No. 17, under the common-law right of access balancing test endorsed by the D.C. Circuit, the proposed exhibits should remain sealed to "guard against risks to national security interests."  *See United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980) (citing, among other cases, *United States v. Wash. Post*, 403 U.S. 943 (1971) (court permitting filing under seal of materials claimed to affect national security)); *see also Metlife*, 865 F.3d at 672 ("[C]ontinued confidential treatment of sensitive information is still possible under *Hubbard*.").   Here, sealing the video exhibits serves the compelling governmental interest of protecting national security—that is, protecting the layout and security apparatus of the Capitol from public disclosure just a few short months after an insurrection on its grounds.

Under the stricter First Amendment analysis regarding the right of access of the public to criminal proceedings, the government also submits that the facts present an extraordinary situation and a compelling governmental interest that justify the continued sealing of materials that the

government has submitted, and that no alternatives would adequately protect the compelling interest. See *United States v. Brice*, 649 F.3d 793, 796 (D.C. Cir. 2011); *Wash. Post v. Robinson*, 935 F.2d 282, 289 n.10 (D.C. Cir. 1991); *Hubbard*, 650 F.2d at 316-17. Moreover, the public already has access to a description of the proposed exhibits in the government's opposition to the defendant's motion for bond as well as screenshots from one proposed exhibit, thus diminishing its need at this early juncture in the case for the actual footage. *See MetLife*, 865 F.3d at 665. And the Capitol Police, which owns the footage, has strongly opposed its public disclosure for security purposes. *See id.*

And while the government's sealed exhibits by themselves had not been designated by the U.S. Capitol Police as "security information"[2] protected from disclosure under 2 U.S.C. § 1979, the Capitol Police's position is that providing access to large sections of the Capitol's CCTV footage would render such information, in the aggregate, "security information" under the statute, as it would provide individuals with a map of where security cameras are located as well as a clear picture of the interior of the Capitol, including entry and exit points, office locations, and the relation of the crucial chambers and offices to other areas of the Capitol. Because Congress appears to have spoken on the issue, the footage arguably is not subject to disclosure at all. *See, e.g.*, *Leopold*, 964 F.3d at 1129; *In re Grand Jury Proceedings (Miller)*, 493 F.3d 152, 154 (D.C. Cir. 2007).

---

2 "Security information" is defined as "(1) is sensitive with respect to the policing, protection, physical security, intelligence, counterterrorism actions, or emergency preparedness and response relating to Congress, any statutory protectee of the Capitol Police, and the Capitol buildings and grounds; and (2) is obtained by, on behalf of, or concerning the Capitol Police Board, the Capitol Police, or any incident command relating to emergency response." 18 U.S.C. § 1979(a).

For the reasons set forth above, the government opposes allowing the Press Coalition access to Videos 9 through 11.

The Government therefore respectfully requests that the Press Coalition's Application for Access to Video Exhibits be granted as to Videos 1 through 8 and denied as to Videos 9 through 11.

Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY
D.C. Bar No. 415793

By:        */s/ Jessica Arco*
Jessica Arco
Trial Attorney - Detailee
D.C. Bar No. 1035204
U.S. Attorney's Office for the District of Columbia
555 4th Street NW
Washington, D.C. 20530
Phone: (202) 514-3204
Email: Jessica.arco@usdoj.gov